OPINION OF THE COURT
Stanley L. Sklar, J.
The principal issue presented is whether an entity which provided physicians, including the defendant in this case, to staff a hospital’s emergency room is entitled to summary judgment dismissing the complaint based on the claim that defendant physician was an independent contractor. I hold that issues of fact preclude the granting of the motion.
Defendant Coastal Practice Services of the Northeast, Inc. (Coastal) moves for summary judgment dismissing the complaint in this medical malpractice action, in which it is claimed that plaintiff’s decedent, Ronald Ferrara, died in defendant New York Downtown Hospital (the hospital) as a result of a failure to diagnose an aortic aneurysm after Ferrara presented to the hospital’s emergency room (ER) where he was treated by defendant Hillard Boskey, M.D., “the primary clinician in the emergency room department on [the] case”. (Boskey EBT, at 71.) Dr. Boskey not only worked as a clinician but he also served as the ER’s medical director. The hospital’s emergency room physicians as well as its medical director were provided to the hospital pursuant to a contract between it and defendant Coastal which had two contracts with Dr. Boskey, one for his position as a clinician and the other in his capacity as the director.
The contract between the hospital and Coastal (the hospital contract) clearly provides that the ER physicians furnished by Coastal “providing medical and clinical services” were independent contractors, were not employees of either Coastal or the hospital, and were ineligible for any kind of employee benefit provided by the hospital or Coastal to their “regular employees”. The hospital contract provided that Coastal was to recruit qualified physicians, who appeared to meet the hospital’s standards, to provide medical and clinical services to ER patients, and obtain a completed application form containing information required by the hospital from each physician. Each recruited physician had to be approved by the hospital and also had to apply for and receive hospital staff privileges before *35 providing ER services. Coastal was required to assist the physician with his hospital privileges application. The physician’s professional conduct was to be governed by the hospital’s bylaws, its medical staff and its policies, rules and regulations. However, the medical director, provided by Coastal, “in conjunction with Hospital administration” had the “ultimate authority on all patient care issues”. (See, hospital contract ¶ 2c.) The hospital was responsible for ensuring that the services provided complied with governmental statutes, rules and regulations. Coastal however had the duty to assure that the physicians had the opportunity to receive infection control training.
Pursuant to the hospital contract Coastal was to “charge patients on a fee-for-service basis for professional services rendered” and the hospital was to provide to Coastal the information needed so that Coastal could bill the patient. (Hospital contract ¶ 14.) The hospital contract also inconsistently provided that the physicians provided by Coastal would be entitled to bill patients. (Id., ¶ 2a.) On this record it is not clear whether the physician or Coastal billed plaintiff. It appears that Coastal set the schedule of professional charges except for services rendered under certain health plans. If the hospital wished to negotiate with an HMO or PPO and the terms of the proposed arrangement involved fees for Coastal’s services, Coastal’s consent was required. The hospital was “not responsible for any bad debts or uncollectible accounts”. (Hospital contract ¶ 14.)
The hospital paid Coastal a set monthly “availability fee” which was subject to reduction if the net physician billings were sufficiently high. The hospital was not permitted to solicit physicians provided by Coastal. Coastal and its physicians were required to have malpractice insurance, but there was no agreement requiring Coastal to indemnify the hospital. Coastal was to provide physician assistants for the ER. Coastal was also to coordinate and provide scheduling services as to the physicians and physician assistants it provided. Coastal was to be responsible for compensating the physician. The hospital was required to display and distribute “sign/forms denoting the existence of an independent, fee-for-service emergency physician practice at the Hospital.” (Hospital contract attachment A.)
Coastal entered into contracts with physicians, including Dr. Boskey, providing medical services, entitled “Independent Contractor (Physicians Agreement)” under which Coastal paid *36 the physician a set hourly fee, as opposed to the fee-for-service charge Coastal was entitled to collect from each patient. The physician was required to obtain malpractice insurance and to use his best efforts to have Coastal named as an additional insured. The contract recited that the physician was to be an independent contractor and that Coastal would have no control over the manner in which the physician performed. The contract also contained a restrictive covenant barring the physician from working directly for the hospital. The physician agreed to indemnify Coastal for any liability imposed as a result of the physician’s negligence. While Coastal was to use its best efforts to provide a schedule acceptable to the physician, Coastal made up the schedule and if the physician was unable to provide scheduled services he had to immediately inform Coastal or provide a substitute.
Dr. Boskey’s independent contractor agreement with Coastal was for a term of one year and was automatically renewed from year to year. Either party could terminate it without cause on 90 days’ written notice.
Coastal also entered into an “Administrative Medical Director Employment Agreement” with Dr. Boskey pursuant to which he was employed by Coastal and given a set annual salary and benefits for serving as administrative medical director at defendant hospital. Under the medical director contract Dr. Boskey was to provide no clinical medical services, and the providing of such services was to be governed by the independent contractor agreement. At his deposition Dr. Boskey testified that when he was treating Ferrara he was functioning both as the administrative medical director and as the primary clinician on the case.
Coastal now seeks summary judgment dismissing the complaint on the ground that Dr. Boskey was acting as an independent contractor and that therefore it cannot be liable for any malpractice on his part, and that further since Ferrara’s wife did not see any signs or receive any information in the ER relating to Coastal, that Coastal cannot be liable under the theory of ostensible agency. Coastal asserts that “no obligations were assumed by Coastal in regard to patient care”. (Rosenberg affidavit ¶ 3.) Coastal maintains in essence that Dr. Boskey was functioning solely as a clinician pursuant to the independent contractor position and asserts that pursuant to the medical director’s agreement Dr. Boskey could not provide clinical medical services. Coastal notes, inter alia, that Dr. Boskey received a 1099 tax form for his services rendered pur *37 suant to the independent contractor agreement and that Coastal did not deduct any income taxes or FICA from the fees paid to Dr. Boskey, factors which while significant are not controlling. (See, Matter of Carr v Woods, 69 AD2d 964 [3d Dept 1979].) Coastal in its reply papers also sought for the first time an order granting it summary judgment on its cross claim against Dr. Boskey for indemnification.
Plaintiff, the decedent’s wife, who has two other defendants to look to, vis-á-vis any malpractice on the part of Dr. Boskey, i.e., the hospital and Dr. Boskey, does not submit papers opposing the motion. While plaintiff, during the pendency of this motion, signed a stipulation of discontinuance as to Coastal it was not signed by all parties and thus is ineffective (see, CPLR 3217 [a] [2]) and plaintiff does not now move for an order discontinuing the action as to Coastal. (See, CPLR 3217 [b].) Accordingly, her claims against Coastal remain.
The only defendant which opposes the motion is the hospital. The hospital asserts that Coastal’s motion is premature since Coastal has not yet been deposed. In addition, the hospital maintains that the fact that one of the contracts between Dr. Boskey and Coastal and the contract between Coastal and the hospital may have recited that Dr. Boskey was an independent contractor is not dispositive and that generally the question of whether one is an independent contractor or an employee is an issue of fact to be decided by the jury after considering all of the circumstances. (Felice v St. Agnes Hosp., 65 AD2d 388 [2d Dept 1978]; see also, PJI3d 2:255.)
The hospital asserts that Coastal’s claim that it did not assume any obligations with respect to patient care is undercut by the fact that Coastal’s employee, Dr. Boskey, in his role as the administrative director in conjunction with the hospital’s administration, had the “ultimate authority on all patient care issues”. In addition, the hospital notes that Dr. Boskey testified that when he was treating Ferrara he was acting as both the clinician and the administrator.
Other factors suggest that Dr. Boskey was not an independent contractor. For example, it appears that the charges for the physician’s service were determined by Coastal not Dr. Boskey and that Coastal rather than Dr. Boskey may have billed for the charges. What part of the amount collected was given to Dr. Boskey is unclear. While Coastal charged on a fee-for-service basis, there is no indication that Dr. Boskey was paid based on the specific services he rendered to a particular patient. Instead, he was paid a flat hourly rate. Also, Dr. Bos *38 key was not hired for a specific job but conceivably could work under the Coastal contract indefinitely.
In light of the foregoing there is at least an issue of fact as to whether Dr. Boskey was an independent contractor or a Coastal employee when he treated Ferrara. (See, e.g., Vanarthos v St. Francis Hosp., NYLJ, May 14, 1993, at 36, col 2 [Sup Ct, Queens County] [issue of fact as to whether entity which supplied ER physicians to a hospital merely provided placement services and whether the physician who provided the services was an employee or an independent contractor of that entity]; Wolski v St. Charles Hosp., NYLJ, May 5, 1992, at 28, col 3 [Sup Ct, Suffolk County] [issue of fact as to whether doctor was an independent contractor or an employee of entity which provided ER physicians to the hospital].) Accordingly, Coastal’s motion seeking summary judgment dismissing the complaint is denied.
Dr. Boskey, while not taking any position on the motion, opposes Coastal’s application for summary judgment on its cross claim against Dr. Boskey since it was raised for the first time in the reply papers. Coastal’s request for summary judgment on its cross claim is denied. (Cf., Dannasch v Bifulco, 184 AD2d 415 [1st Dept 1992].)